[Cite as *State v. Fannin*, 2021-Ohio-2462.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | CASE NO. CA2020-03-022 |
| Appellee, | : | O P I N I O N<br>7/19/2021 |
| | : | |
| - vs - | : | |
| | : | |
| JUSTIN M. FANNIN, | : | |
| Appellant. | : | |


CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 19CR35665


David P. Fornshell, Warren County Prosecuting Attorney, and Kirsten A. Brandt, Assistant Prosecuting Attorney, for appellee.

The VanNoy Firm, and Markus L. Moll, for appellant.


**M. POWELL, P.J.**

{¶ 1} Appellant, Justin Fannin, appeals his convictions for rape and gross sexual imposition rendered in the Warren County Court of Common Pleas following a jury trial. For the reasons detailed below, we affirm.

{¶ 2} In 2015, Fannin began a relationship with C.F. The victim of Fannin's offenses, M.M., is C.F.'s daughter. At all times pertinent to this appeal, M.M. was between

five and seven years of age. In 2016, Fannin and C.F. had a son together and were married in August 2017. That same year the family moved to an address on Utica Road, Waynesville, Ohio located in Warren County.

{¶ 3} M.M. had her own bedroom in the Waynesville home, but frequently woke up during the middle of the night and would join Fannin, C.F., and her brother in their bed. In early 2019, M.M. disclosed that between August 1, 2017, and January 31, 2019, Fannin had sexually abused her on multiple occasions with most of the incidents of abuse occurring while M.M. was lying in bed with Fannin. M.M. disclosed incidents where Fannin had put his penis in her mouth, licked her anus, and digitally penetrated her vagina. M.M. also stated that she had touched Fannin's penis and that on another occasion Fannin had touched her vagina with his penis while she was naked in the shower.

{¶ 4} Following the disclosures, C.F. confronted Fannin, who denied that any sexual contact had occurred between him and M.M. Fannin claimed that if it was happening in the middle of the night, he was not aware of it. Initially, C.F. chose to believe Fannin. However, C.F. enrolled M.M. in counseling a few weeks later because M.M. was making sexual comments and exhibiting sexual behaviors, such as leg clenching and "gasping, moaning almost." After M.M.'s first counseling session, a referral was made to law enforcement for further investigation.

{¶ 5} On June 28, 2019, Fannin was indicted on three counts of rape of a child under ten years old in violation of R.C. 2907.02(A)(1)(b), a first-degree felony, and one count of gross sexual imposition in violation of R.C. 2907.05(A)(4), a third-degree felony.

{¶ 6} The case proceeded to a jury trial. The state's trial witnesses included M.M., C.F., a pediatric nurse practitioner, Detective Kevin Barton, M.M.'s psychologist, and a social worker who conducted a forensic interview with M.M.

{¶ 7} M.M.'s testimony detailed the sexual abuse committed by Fannin. C.F.

- 2 -

testified about the family history, her interactions with Fannin, and M.M.'s disclosure of sexual abuse. Thurman testified about her physical examination of M.M. The state, over Fannin's objection, also presented testimony from M.P., Fannin's daughter from a previous relationship, who was permitted to testify about being sexually abused by Fannin when she was ten years old. After the state rested, the trial court denied Fannin's Crim.R. 29 motion for a judgment of acquittal.

{¶ 8} Fannin presented testimony from his mother, stepfather, and nephew. His mother's testimony primarily addressed M.P.'s testimony that Fannin had previously sexually abused her. Fannin's mother stated that M.P. had a reputation of not being truthful and she did not believe Fannin had abused M.P. She testified that she was not aware of the specific allegations made by M.M. but did not believe them to be true in any event. Fannin's nephew testified about his relationship with M.P. and her reputation for dishonesty.

{¶ 9} Fannin then testified on his own behalf, denying the allegations and stating, "I would never have committed a [sic] sexual conduct or sexual act with a child." Fannin acknowledged that M.P. had made allegations against him in 2010 but did not understand why the allegations were made. Fannin also acknowledged that he had been convicted of child endangering and had a restraining order placed on him due to M.P.'s sexual abuse allegations. Fannin denied that he had any sexual contact with M.P.

{¶ 10} Following submission to the jury, Fannin was found guilty on all four counts contained in the indictment. Fannin was sentenced to prison for 15 years to life on each count of rape and 36 months for gross sexual imposition. The trial court ordered two counts of rape and the count of gross sexual imposition to be served consecutively. The prison term for the remaining rape count was ordered to be served concurrently for an aggregate prison term of 33 years to life. Fannin now appeals, raising nine assignments of error for review. For ease of discussion, we will address Fannin's assignments of error out of order.

{¶ 11} Assignment of Error No. 1:

{¶ 12} IT WAS PREJUDICIAL ERROR FOR THE TRIAL COURT TO ALLOW EVIDENCE OF PRIOR BAD ACTS OF THE APPELLANT INTO EVIDENCE PURPORTEDLY TO ESTABLISH MOTIVE, LACK OF MISTAKE, AND/OR INTENT.

{¶ 13} In his first assignment of error, Fannin argues the trial court erred and abused its discretion by admitting M.P.'s other-acts testimony concerning his alleged prior sexual abuse of M.P. Fannin's argument is without merit.

{¶ 14} Evidence relating to "other crimes, wrongs, or acts" cannot be admitted for the purpose of "prov[ing] the character of a person in order to show action in conformity therewith." Evid.R. 404(B). It may, however, be admissible for other purposes, such as proving "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.*

{¶ 15} R.C. 2945.59 similarly provides that:

> In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant.

{¶ 16} Therefore, similar to Evid.R. 404(B), R.C. 2945.59 "preclude[s] the admission of evidence of other crimes, wrongs, or acts offered to prove the character of an accused in order to show that the accused acted in conformity therewith, but it does not preclude admission of that evidence for other purposes, e.g., to show proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *State v. Williams,* 134 Ohio St.3d 521, 2012-Ohio 5695, at ¶ 25.

{¶ 17} The supreme court articulated a three-part analysis that must be applied when considering the admission of other-acts testimony: the evidence must be relevant, it must be introduced for a purpose other than proving propensity, and the probative value of the evidence must not be substantially outweighed by the risk of unfair prejudice. *Williams* at ¶ 20; *State v. Hartman*, 161 Ohio St.3d 214, 2020-Ohio-4440, ¶ 22. In *Williams*, the defendant was convicted of rape, gross sexual imposition, and unlawful sexual conduct with a minor, for his abuse of a teenage boy. *Id.* at ¶ 1. At trial, the trial court admitted evidence that the defendant had engaged in a similar relationship with another teenage boy. *Id.* at ¶ 7-8. The supreme court found this evidence to be admissible. *Id.* at ¶ 25. Though it tended to show that the defendant had a pattern of grooming teenage boys to take advantage of them sexually, the evidence was admissible for the purpose of refuting the defendant's claims that he was not sexually attracted to teenage boys and establishing that the defendant had acted with the specific intent of achieving sexual gratification. *Id.* at ¶ 22, 25.

{¶ 18} More recently, the supreme court issued two opinions "to help clear up some of the confusion that exists regarding the use of other-acts evidence" and to "provide trial courts with a road map for analyzing the admission of other-acts evidence * * *." *Hartman*, 2020-Ohio-4440 at ¶ 19; *State v. Smith*, 162 Ohio St. 3d 353, 2020-Ohio-4441, ¶ 37.

{¶ 19} In *Hartman*, the defendant was accused of raping an adult female acquaintance in her hotel room after they had spent the evening out with a group of friends. *Id.* at ¶ 1. To counter the defendant's claim that the sexual encounter with the victim was consensual, the state presented evidence establishing that the defendant had sexually abused his stepdaughter when she was a child. *Id.* at ¶ 12. The defendant was found guilty of rape. *Id.* at ¶ 16. On appeal, the Eighth District Court of Appeals reversed the defendant's convictions on grounds that the evidence purporting to show that he sexually

abused his stepdaughter was inadmissible other-acts evidence under Evid.R. 404(B). *Id.* at ¶ 17.

{¶ 20} The supreme court agreed with the Eighth District and held that the evidence at issue "constituted improper propensity evidence, and the trial court erred in admitting it." *Id.* at ¶ 64. In so doing, the supreme court analyzed the four rationales provided: (1) modus operandi, (2) common scheme or plan, (3) motive, and (4) intent and absence of mistake. The supreme court concluded that the evidence was inadmissible and created an improper inference that the defendant "preys on sleeping or impaired women," the precise propensity inference Evid.R. 404(b) forbids. *Id.* at ¶ 63-64.

{¶ 21} In the present case, the state filed a motion in limine regarding M.P.'s testimony. The state argued that this evidence was admissible to prove "a similar scheme, sexual motivation, sexual intent, preparation, and system in committing the offense in the present case."

{¶ 22} The trial court found the testimony admissible and granted the state's motion in limine, finding the evidence is relevant to establishing [Fannin's] motive and the plan to target young girls. At trial, over Fannin's objection, the trial court permitted the state to present M.P.'s testimony.

{¶ 23} During her testimony, M.P. described her relationship with Fannin and alleged that he sexually abused her when she was 10 years old. M.P. believed that her relationship with Fannin began normally but, over time, observed that he became more of a friend than a father figure. Fannin enforced rules differently than her mother and allowed her to skip homework assignments. M.P. recalled the instance of sexual abuse was when Fannin asked her to "help him out" by putting her mouth on his penis while in his bedroom. This sexual touching and contact continued over the next year. M.P. stated that she was unable to remember every time because it happened so often but remembers some events in vivid

detail. The abuse stopped the day before Father's Day 2010 when she disclosed the abuse via text message to her aunt and a family friend. Fannin was initially indicted for three counts of rape. *State v. Fannin*, Montgomery No. 2010 CR 02654 (Indictment) (October 7, 2010). Fannin later pled guilty to one count of endangering children, a second-degree felony, and was sentenced to community control with an order that he have no contact with M.P. *State v. Fannin*, Montgomery No. 2010 CR 02654 (Entry) (June 13, 2011).

{¶ 24} On appeal, the state maintains that the evidence was admissible to show Fannin's motive and to establish Fannin's "plan, scheme and preparation of female children in his home to gain their trust and confidence for the purpose of grooming them for sexual activity."

{¶ 25} Following review, we disagree with the reasons advanced by the state in support of the admissibility of M.P.'s testimony but find that the evidence is otherwise admissible. First, the evidence was not admissible as "motive evidence." As discussed in detail in *Hartman* "[m]otive evidence establishes that the accused had a specific reason to commit a crime." *Hartman*, 2020-Ohio-4440 at ¶ 48. Evidence that Fannin sexually abused his daughter did not provide evidence of any motive beyond which can be inferred from the commission of the crime itself. *See Hartman* at ¶ 49, citing *State v. Curry*, 43 Ohio St.2d 66, 71 (1975) ("A person commits or attempts to commit statutory rape for the obvious motive of sexual gratification"). Fannin's motive in this case was not a material issue in dispute; he was undoubtedly pursuing sexual gratification. Likewise, the evidence was not admissible as "common-plan evidence." As held in *Hartman*, "[c]ommon-plan evidence generally concerns events that are 'inextricably related' to the crime charged." *Id.* at ¶ 41. The other acts form the "immediate background" of the present crime and are typically either part of the "same transaction" as the present criminal trial or part of a "sequence of events" leading up to the commission of the crime. *Id.* The supreme court provided two such

examples:

> A defendant's plan might be demonstrated through evidence of "prior preparatory acts," such as the prior theft of an instrumentality used in the commission of the current crime. For instance, in a prosecution for illegally manufacturing drugs under R.C. 2925.04, evidence that the defendant recently robbed a warehouse to steal a barrel of the ingredient methylamine could be admissible to show the defendant's scheme to produce methamphetamine. Or consider a case in which the defendant is slated to inherit an estate if two other heirs are no longer living. In a trial for the murder of one heir, evidence showing that the defendant killed the other would not be admissible to demonstrate that he was a cold-blooded killer, but it could be admitted to show that he had a plan to kill the other heirs to attain the inheritance.

*Id.* at ¶ 42 (Citations omitted).

{¶ 26} The evidence elicited from M.P. is not within the ambit of common plan evidence under the precedent explained in *Hartman*. Fannin's sexual abuse of M.P. was not part of a larger scheme involving the sexual abuse of M.M. For those reasons, it was not admissible as "common-plan evidence." *See, e.g., Smith*, 2020-Ohio-4441 at ¶ 41 (discrete events occurring some 30 years apart are not a plan embracing both the prior criminal activity and the charged crimes).

{¶ 27} We therefore find that the other-acts evidence was not admissible for the purpose of establishing motive or "common-plan evidence." Nevertheless, an appellate court shall affirm a trial court's judgment that is legally correct on other grounds, that is, one that achieves the right result for the wrong reason, because such an error is not prejudicial. *State v. Payton*, 124 Ohio App.3d 552, 557 (12th Dist.1997); *State v. Lewis*, 9th Dist. Summit No. 29696, 2021-Ohio-1575, ¶ 16 (other-acts evidence admissible for alternative reason).

{¶ 28} We find that the other-acts evidence was admissible for purposes of showing intent and absence of mistake. "Other-acts evidence is admissible to negate a defendant's

claim of mistake or accident with respect to the commission of the alleged crime; such evidence tends '[t]o show, by similar acts or incidents, that the act in question was not performed inadvertently, accidentally, involuntarily, or without guilty knowledge.'" *Hartman*, 2020-Ohio-4440 at ¶ 52, quoting McCormick, *Evidence*, Section 190, at 804 (4th Ed. 1994).

{¶ 29} In *Smith*, the defendant was charged with sexually abusing his granddaughter. At trial, the state sought to introduce other-acts evidence that the defendant had molested his daughter under similar circumstances decades earlier. *Id.* at ¶ 1. The defendant admitted applying baby oil to the victim's body but said that he did so without any sexual intent and any contact with her private parts was accidental. *Id.* at ¶ 44. The defendant's response to allegations that he pressed his penis against the victim was that, if it happened, it was an accidental result of his tendency to get erections while sleeping. *Id.* He further denied allegations of showing the victim pornography by claiming that she had seen an R-rated movie that accidentally started playing. *Id.* Because the defendant placed his intent at issue by claiming that his actions were accidental and not done with sexual intent, the evidence was properly admissible to show absence of mistake — or to put it another way, that he committed the acts not accidentally, but with the intent of sexual gratification. *Id.* ¶ 47.

{¶ 30} In the present case, Fannin denied that he had any sexual contact or engaged in any sexual conduct with M.M. and generally denied that he would ever engage in "sexual conduct or [a] sexual act with a child." As previously noted, when C.F. learned that M.M. had been "touching" Fannin in bed, his response was that "if it had been happening in the middle of the night, that he wasn't aware of it." In other words, Fannin was claiming that these alleged instances were accidental, inadvertent, or unintended. In his trial testimony, Fannin categorically denied that he would have sexual contact with a child.

{¶ 31} Because Fannin placed his intent at issue by claiming that his actions were

accidental, innocent, or without his knowledge, the other-acts evidence relating to M.P. was properly admissible to show intent and the absence of mistake. Furthermore, just as the supreme court reasoned in *Williams*, Fannin's prior conduct rebutted his denials that he would ever commit a sexual act with a child.[1] As in *Smith*, we agree that this evidence is probative and admissible to show intent and the absence of mistake.

{¶ 32} We also do not believe the trial court abused its discretion in deciding that the probative value of the other-acts evidence was not substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.

{¶ 33} Furthermore, the trial court explicitly instructed the jury, prior to M.P.'s testimony and again before the jury retired to deliberate, that M.P.'s testimony was not to be considered as propensity evidence. The jury is presumed to follow the trial court's instructions. *State v. Perez*, 124 Ohio St.3d 122, 2009-Ohio-6179, ¶ 103. As a result, we find the trial court did not abuse its discretion by admitting the other-acts evidence after weighing its probative value against its prejudicial effect. Fannin's first assignment of error is overruled.

{¶ 34} Assignment of Error No. 3:

{¶ 35} THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT PERMITTED AN INCOMPETENT MINOR WITNESS TO TESTIFY.

{¶ 36} In his third assignment of error, Fannin argues the trial court erred by permitting M.M. to testify because she did not have the ability to receive accurate impressions of fact and did not possess the ability to communicate what she had observed. Fannin's argument is without merit.

{¶ 37} Evid.R. 601 sets forth general rules of competency. Former subsection (A),

---

1. In *Williams*, the supreme court found that the other acts evidence was admissible to rebut the defendant's claim that he was not sexually attracted to teenage boys.

which was in effect at the time of trial, provided:

> Every person is competent to be a witness except:
>
> (A) Those of unsound mind, and children under ten years of age, who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly."

In determining whether a child under ten years old is competent to testify, the trial must take into consideration: "(1) the child's ability to receive accurate impressions of fact or to observe acts about which he or she will testify, (2) the child's ability to recollect those impressions or observations, (3) the child's ability to communicate what was observed, (4) the child's understanding of truth and falsity and (5) the child's appreciation of his or her responsibility to be truthful." *State v. Frazier*, 61 Ohio St.3d 247, 251 (1991).

{¶ 38} A child witness under ten years old may be competent to testify even though the child is unable to recollect all of the facts of a given situation. *State v. Fry*, 125 Ohio St.3d 163, 2010-Ohio-1017, ¶ 76. The child's answers must demonstrate that the child "can perceive and recall generally and understands the concept of truthfulness." *Id.* A trial court's finding that a child under the age of ten is competent to testify shall not be disturbed, absent an abuse of discretion. *In re M.G.*, 12th Dist. Butler No. CA2015-06-126, 2016-Ohio-2677, ¶ 18.

{¶ 39} The trial court conducted an examination of M.M. to determine her competency to testify. During the examination, M.M. responded to the trial court's questions, communicated her first name, her age, her younger brother's age, where and with whom she lived, what school she went to, what grade she was in, her second grade teacher, her first grade teacher, her favorite subject, that she was home schooled the previous year, who was home with her when she was home schooled, where her stepfather was when she was home schooled, and where they went on summer vacation, who went

with her and how long she was gone. M.M. also stated that she knew the difference between telling the truth and telling a lie and demonstrated her ability to tell the difference. She explained that lying was not good and "[y]ou get in big trouble" when you lie.

{¶ 40} Fannin challenges M.M.'s competency on the basis of her inability to answer questions about what she had for lunch the previous day, her birth year, her last name, her relationship to Fannin, and where she spent her last Christmas. He also cites M.M.'s inability to remember what he characterizes as inconsistencies between her trial testimony and what she told the forensic interviewer.

{¶ 41} However, upon review of the record, we find the trial court did not abuse its discretion when it permitted M.M. to testify. Although M.M. did not know the answers to some of the court's questions, she did know the answer to most of them and many of the facts she provided were also corroborated by her mother at trial. Moreover, given M.M.'s relationship with Fannin as her stepfather and the confusion surrounding her last name, which had changed several times, it is not surprising that she would have been confused about certain details of her life. *See, e.g., State v. Tillman*, 12th Dist. Butler No. CA2003-09-243, 2004-Ohio-6240, at ¶ 12 (five-year-old victim permitted to testify despite difficulty in answering some questions); *State v. McNeill*, 83 Ohio St.3d 438, 443 (1998) ("[w]hile the children could not answer every question posed, the transcript indicates they were in fact able to receive, recollect, and communicate impressions of fact, and appreciate the responsibility to be truthful"). Additionally, any inconsistency between M.M.'s trial testimony and her prior forensic interview relate to her credibility, not her competency. As a result, we find the trial court did not err by allowing M.M. to testify. Fannin's third assignment of error is overruled.

{¶ 42} Assignment of Error No. 4:

{¶ 43} THE TRIAL COURT ERRED TO THE PREJUDICE OF MR. FANNIN AS

THERE WAS INSUFFICIENT EVIDENCE TO CONVICT.

{¶ 44} Assignment of Error No. 5:

{¶ 45} THE TRIAL COURT ERRED TO THE PREJUDICE OF MR. FANNIN BECAUSE THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 46} In his fourth and fifth assignments of error, Fannin argues that his convictions are not supported by sufficient evidence and are against the manifest weight of the evidence. We will address both arguments together.

{¶ 47} The concepts of sufficiency of the evidence and weight of the evidence are legally distinct. *State v. Wright*, 12th Dist. Butler No. CA2012-08-152, 2014-Ohio-985, ¶ 10. Nonetheless, as this court has observed, a finding that a conviction is supported by the manifest weight of the evidence is also dispositive of the issue of sufficiency. *State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 19. "Because sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency." *State v. Hart*, 12th Dist. Brown No. CA2011-03-008, 2012-Ohio-1896, ¶ 43.

{¶ 48} A manifest weight challenge scrutinizes the proclivity of the greater amount of credible evidence, offered at a trial, to support one side of the issue over another. *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. In assessing whether a conviction is against the manifest weight of the evidence, a reviewing court examines the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses, and determines whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Morgan*, 12th Dist. Butler Nos. CA2013-08-146 and CA2013-08-147, 2014-Ohio-2472, ¶ 34.

{¶ 49} Rape is defined under R.C. 2907.02 and provides "[n]o person shall engage

- 13 -

in sexual conduct with another who is not the spouse of the offender * * * when * * * [t]he other person is less than thirteen years of age[.]" Sexual conduct includes, inter alia, fellatio, cunnilingus, and penetration of the vaginal or anal openings. R.C. 2907.01(A).

{¶ 50} Gross sexual imposition is defined in R.C. 2907.05, which states:

(A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:

* * *

(4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person.

{¶ 51} The Revised Code defines "sexual contact" as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).

{¶ 52} A precise time and date of an alleged offense are not ordinarily essential elements. *State v. Vunda*, 12th Dist. Butler Nos. CA2012-07-130 and CA2013-07-113, 2014-Ohio-3449, ¶ 36. In sexual abuse cases involving children, it may be impossible to provide a specific date. *Id*. "The problem is compounded where the accused and the victim are related or reside in the same household, situations which often facilitate an extended period of abuse. An allowance for reasonableness and inexactitude must be made for such cases." *State v. Barnes*, 12th Dist. Brown No. CA2010-06-009, 2011-Ohio-5226, ¶ 12.

{¶ 53} Following review, we find the state presented sufficient evidence and Fannin's convictions are supported by the weight of the evidence. In this case, M.M. testified about the sexual acts underlying each count in the indictment. M.M. testified that when she was in Fannin and C.F.'s bed, he pushed her under the covers and took out his private part and

put it in her mouth. She testified that his private part would go inside her mouth and described it as "gross" and "slimy." On another occasion, while her mother and brother were asleep in bed, she sat on Fannin's face and Fannin licked her "bottom" on the part where she went to the restroom. She explained that Fannin's tongue went on the outside of that area "and then it went inside, too." On a third occasion, M.M. testified that Fannin put his hand inside her private and "shaked it really hard" while wiggling his hand, which hurt. Another time, Fannin touched her private with his hand over and under her underwear and she touched his private. And finally, M.M. explained that one time she was naked in the shower with Fannin, and he touched his private to her private.

{¶ 54} M.M.'s testimony was corroborated by her mother, who explained that M.M. exhibited certain physical manifestations from the abuse. M.M. told her mother that she "couldn't * * * watch her iPad or her shows or her friends without looking at them in inappropriate ways." M.M. also exhibited certain sexualized behaviors, such as crossing her legs and squeezing her legs while making gasping or groaning sounds.

{¶ 55} In addition, M.M.'s psychologist, Dr. Miceli, testified that she observed behaviors in M.M. that were consistent with children who have been sexually abused. Those included sexualized behaviors, mood swings, anger outbursts, sleep disturbances, and irritability. Furthermore, Dr. Miceli observed that M.M. described the sexual acts using sensory details, such as "slimy" and "yucky." Dr. Miceli testified that those details were significant because they suggested that she had personally experienced the sexual acts, as opposed to merely describing something that she had seen in pornography or elsewhere.

{¶ 56} The state also presented evidence that Fannin's abuse had invaded M.M.'s thoughts. During a group therapy session, M.M. drew a picture of her mother and brother sleeping in bed beside her and Fannin. The drawing depicts her touching Fannin's penis while she is crying. In the picture, Fannin has his eyes closed with a line going from Fannin's

head that said "FAYCKSLEP." Dr. Miceli testified that M.M. told her that the drawing depicted Fannin "fake sleeping" or pretending to sleep, which provided context for statements she made during her forensic interview.

{¶ 57} Based on the evidence presented at trial, we find the jury's verdict was not against the manifest weight of the evidence. The jury did not clearly lose its way in concluding that Fannin was guilty of three counts of rape and one count of gross sexual imposition. As the trier of fact, the jury was in the best position to judge the credibility of the witnesses. *State v. Sheldon,* 12th Dist. Brown No. CA2013-12-018, 2014-Ohio-5488, ¶ 25. Since Fannin's convictions are supported by sufficient evidence and are not against the manifest weight of the evidence, we overrule Fannin's fourth and fifth assignments of error.

{¶ 58} Assignment of Error No. 6:

{¶ 59} A PROPERLY QUALIFIED EXPERT IS PERMITTED TO TESTIFY TO THE ULTIMATE ISSUE IN A CASE AS LONG AS THE OPINION BASED ON INFORMATION PERCEIVED BY THE EXPERT OR ADMITTED INTO EVIDENCE AT TRIAL. (sic) THE COURT PERMITTED THE STATE'S MEDICAL EXPERT TO TESTIFY FROM A REPORT WHERE THE PERSON WHO DRAFTED THE REPORT DID NOT TESTIFY AT TRIAL.

{¶ 60} In his sixth assignment of error, Fannin alleges the state's medical expert improperly bolstered M.M.'s testimony.

{¶ 61} Evid.R. 702 allows the admission of expert testimony where the witness's testimony relates to matters beyond the knowledge or experience of lay persons; the witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony; and the witness's testimony is based on reliable scientific, technical, or other specialized information. *Tillman,* 2004-Ohio-6240 at ¶ 17. The decision to admit expert testimony is within the sound discretion of the trial court and will not be reversed absent an abuse of discretion. *State v. Jones,* 90 Ohio

- 16 -

St.3d 403, 414 (2000).

{¶ 62} In general, a witness may not give an opinion regarding the veracity of another's witness's testimony. *State v. Boston*, 46 Ohio St.3d 108 (1989), paragraph one of the syllabus; *State v. Cappadonia*, 12th Dist. Warren No. CA2008-11-138, 2010-Ohio-494 at ¶ 36. However, there is an important distinction between "expert testimony that a child witness is telling the truth and evidence which bolsters a child's credibility insofar as it supports the prosecution's efforts to prove that a child has been abused." *State v. Stowers*, 81 Ohio St. 3d 260, 263 (1998). Contrary to Fannin's argument, only statements that directly support the veracity of the witness are prohibited. *State v. Boles*, 12th Dist. Brown No. CA2012-06-012, 2013-Ohio-5202, ¶ 30. This distinction recognizes the reality that, "indirect bolstering of a victim's credibility is not the same as the direct rendering of an opinion as to a victim's veracity that was involved in *Boston*." *Id; see also State v. Barnes*, 12th Dist. Brown No. CA2010-06-009, 2011-Ohio-5226 (expert testimony that victim's statements were "consistent with inappropriate sexual contact" was admissible and did not constitute improper vouching).

{¶ 63} The state presented the testimony of Dina Thurman, a pediatric nurse practitioner at Dayton Children's Hospital. Thurman was qualified as an expert witness and formed her opinion based on M.M.'s medical history, M.M.'s physical examination, and Thurman's training and experience in examining hundreds of children for suspected sexual abuse. Thurman stated that M.M. had a normal physical exam but explained that the absence of physical findings does not mean that a patient was not abused. She explained that "95 percent of kids that we see and that what research has shown is they have normal exams, even after disclosing sexual contact." This is because sexual contact can occur but not cause an injury, or if there is an injury, those injuries can heal quickly and completely. As a result, Thurman testified that M.M.'s "normal physical exam [was] consistent with her

- 17 -

disclosure for sexual abuse. It doesn't confirm or rule it out, but it is consistent with it."

{¶ 64} Following review, we find Fannin's argument is without merit. Thurman never vouched for the credibility of M.M. or otherwise improperly bolstered her testimony. Rather, her testimony was relevant in explaining that the absence of physical findings does not necessarily mean that a patient was not abused and that it was very common for sexually abused children to have a normal exam. This is not improper bolstering or vouching. As a result, we find the trial court did not err in admitting this testimony. Fannin's sixth assignment of error is overruled.

{¶ 65} Assignment of Error No. 7:

{¶ 66} THE TRIAL COURT DENIED MR. FANNIN'S DUE PROCESS AND RIGHT TO A FAIR TRIAL WHEN IT DID NOT ACT IN ACCORDANCE WITH CRIM. R. 24(J).

{¶ 67} In his seventh assignment of error, Fannin alleges the trial court erred by not acting in accordance with Crim.R. 24(J). Fannin's argument is based upon the trial court's decision to allow jurors to submit written questions to witnesses following direct and cross-examination without a prior instruction, in accordance with Crim.R. 24(J)(3), that the jurors shall not display or discuss a proposed question with other jurors.

{¶ 68} Fannin acknowledges he failed to object to the trial court's instruction and, therefore, waived all but plain error. *State v. Evick*, 12th Dist. Clermont No. CA2018-03-016, 2019-Ohio-2791, ¶ 24. To constitute plain error there must be a deviation from a legal rule. *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). Second, the error must be fundamental, palpable, and obvious on the record such that it should have been apparent to the court without an objection. *State v. Barnette*, 12th Dist Butler No. CA2012-05-099, 2013-Ohio-990, ¶ 30. Third, the error must have affected appellant's substantial rights, i.e., the error affected the outcome of the trial. *Barnes* at 27. An appellate court will take notice of plain error with "utmost caution, under exceptional circumstances, and only to prevent a manifest

miscarriage of justice." *State v. Baldev*, 12th Dist. Butler No. CA2004-05-106, 2005-Ohio-2369, ¶ 12.

{¶ 69} Crim. R. 24 (J) provides in pertinent part:

The court may permit jurors to propose questions for the court to ask of the witnesses. If the court permits jurors to propose questions, the court shall use procedures that minimize the risk of prejudice, including all of the following:

* * *

(3) Instruct the jurors that they shall not display or discuss a proposed question with other jurors;

* * *

{¶ 70} We find the trial court did not commit plain errorj by failing to instruct the jury in accordance with Crim. R. 24(J)(3). There is nothing in the record to suggest that any juror displayed or discussed their questions with any other juror. Fannin does not dispute this, nor does he argue how, but for the trial court's failure to give the instruction, the outcome of his trial would have been different. *See, e.g., State v. Fite*, 9th Dist. Summit No. 25318, 2011-Ohio-2500, ¶ 37 (appellant failed to show violation of Crim. R. 24, nor has he argued how the outcome of the trial would have been different). Considering the evidence in support of Fannin's guilt, we do not believe any such omission affected the outcome of the trial. Fannin's seventh assignment of error is overruled.

{¶ 71} Assignment of Error No. 8:

{¶ 72} APPELLANT'S CONVICTIONS, IN THE ABSENCE OF THE STATE'S PRESENTATION OF EVIDENCE PROVING VENUE BEYOND A REASONABLE DOUBT, CONSTITUTE PLAIN ERROR.

{¶ 73} Fannin's eighth assignment of error alleges the state failed to prove venue beyond a reasonable doubt. "Venue commonly refers to the appropriate place of trial for a criminal prosecution within a state." *State v. Meridy*, 12th Dist. Clermont. No. CA2003-11-

- 19 -

091, 2005-Ohio-241, ¶ 12. The importance of venue is to give the defendant the right to be tried in the vicinity of his alleged criminal activity. *State v. Workman*, 12th Dist. Clermont Nos. CA2016-12-082 and CA2016-12-083, 2017-Ohio-8638, ¶ 58. The standard to establish venue is whether appellant has a "significant nexus" with the county where the trial was held. *Meridy* at ¶ 22; *State v. Stone*, 12th Dist. Warren No. CA2007-11-132, 2008-Ohio-5671, ¶ 16. As a result, and pursuant to R.C. 2901.12, Ohio's venue statute, "[t]he trial of a criminal case in this state shall be held in a court having jurisdiction of the subject matter, and * * * in the territory of which the offense or any element of the offense was committed." R.C. 2901.12(A).

{¶ 74} A review of the record reveals that the state presented clear and unrefuted testimony to demonstrate that venue was proper in Warren County. The evidence established that Fannin committed his offenses at a residence on Utica Road in Clearcreek Township, Warren County, Ohio. During her testimony, M.M. identified photographs of the house on Utica Road where she lived with Fannin, C.F., and her brother. She described the sexual acts that occurred in that residence. M.M.'s mother confirmed the location of the residence and the timeline of their living quarters over the years. Detective Barton confirmed the location of the residence as being in Warren County. Contrary to Fannin's arguments, the record clearly establishes that the state established venue. Accordingly, Fannin's eighth assignment of error is overruled.

{¶ 75} Assignment of Error No. 9:

{¶ 76} IMPOSITION OF CONSECUTIVE SENTENCES IS CONTRARY TO LAW WHEN THE FINDINGS MADE IN SUPPORT OF THE IMPOSITION OF THE CONSECUTIVE SENTENCES ARE NOT SUPPORTED BY THE RECORD.

{¶ 77} In his ninth assignment of error, Fannin alleges the trial court erred by imposing consecutive sentences. We disagree.

{¶ 78} This court reviews felony sentences pursuant to the standard of review set forth in R.C. 2953.08(G)(2) to determine whether the imposition of those sentences is clearly and convincingly contrary to law. *State v. Julious*, 12th Dist. Butler No. CA2015-12-224, 2016-Ohio-4822, ¶ 8. Pursuant to that statute, an appellate court may modify or vacate a sentence only if, by clear and convincing evidence, "the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *State v. Harp*, 12th Dist. Clermont No. CA2015-12-096, 2016-Ohio-4921, ¶ 7. A sentence is not clearly and convincingly contrary to law where the trial court considers the purposes and principles of sentencing as set forth in R.C. 2929.11, as well as the seriousness and recidivism factors listed in R.C. 2929.12, and sentences a defendant within the permissible statutory range. *State v. Brandenburg*, 12th Dist. Butler Nos. CA2014-10-201 and CA2014-10-202, 2016-Ohio-4918, ¶ 9.

{¶ 79} Pursuant to R.C. 2929.14(C)(4), a trial court must engage in a three-step analysis and make certain findings before imposing consecutive sentences. *State v. Dillon*, 12th Dist. Madison No. CA2012-06-012, 2013-Ohio-335, ¶ 9. First, the trial court must find that the consecutive sentence is necessary to protect the public from future crime or to punish the offender. *Id*. Second, the trial court must find that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public. *Id*. Third, the trial court must find that one of the following applies:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or

unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4)(a)-(c).

{¶ 80} "A trial court satisfies the statutory requirement of making the required findings when the record reflects that the court engaged in the required analysis and selected the appropriate statutory criteria." *State v. Setty,* 12th Dist. Clermont Nos. CA2013-06-049 and CA2013-06-050, 2014-Ohio-2340, ¶ 113. In imposing consecutive sentences, the trial court is not required to provide a word-for-word recitation of the language of the statute or articulate reasons supporting its findings. *Id.* Nevertheless, the record must reflect that the trial court engaged in the required sentencing analysis and made the requisite findings. *Id.* The court's findings must thereafter be incorporated into its sentencing entry. *State v. Ahlers,* 12th Dist. Butler No. CA2015-06-100, 2016-Ohio-2890, ¶ 10.

{¶ 81} The record reflects that the trial court made the findings required by R.C. 2929.14(C)(4) when it ordered Fannin's sentences be served consecutively. The trial court noted the seriousness of the charges. Fannin took advantage of M.M. through his relationship with her mother. The record reflects that over a period of approximately 18 months, Fannin abused M.M. on multiple occasions and allowed her to believe that she was the instigator of this abuse. The trial court found that Fannin's conduct was more serious than that normally constituting the offenses of rape and that consecutive sentences were necessary to protect the public from future crimes.

{¶ 82} The trial court later memorialized these findings within its sentencing entry. From the trial court's statements at the sentencing hearing and the language used in the sentencing entry, it is clear that the trial court complied with the dictates of R.C.

- 22 -

2929.14(C)(4). *See State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, ¶ 37; *State v. Sess*, 12th Dist. Butler No. CA2015-06-117, 2016-Ohio-5560, ¶ 35-38. It is also clear that the record supports the trial court's findings that the harm caused by Fannin's offenses was so great or unusual that no single prison term adequately reflected the seriousness of his conduct and that consecutive sentences were necessary to punish Fannin and protect the public.

{¶ 83} Fannin argues the trial court did not consider his "work history, likelihood to reoffend, outside support, or other pertinent factors." However, as noted above, the court was not required to articulate its reasons provided the record reflects that the court engaged in the required sentencing analysis. *State v. Moore*, 12th Dist. Clermont No. CA2014-02-016, 2014-Ohio-5191, ¶ 12. Moreover, the record rebuts Fannin's assertions he makes on appeal. During the sentencing hearing, Fannin's counsel urged the court to impose a minimum sentence based on Fannin's age, his prior record, his employment, and his work ethic. After receiving statements from the prosecutor, C.F., defense counsel, and Fannin, the trial court specifically stated that it had considered the statements made in open court, "a number of letters from friends and family members" of Fannin, as well as the purposes and principles of sentencing, and the seriousness and recidivism factors. The record reflects that the trial court engaged in the required analysis and imposed an appropriate sentence. Fannin's sentence is not contrary to law. Fannin's ninth assignment of error is overruled.

{¶ 84} Assignment of Error No. 2:

{¶ 85} THE CUMULATIVE EFFECT OF DEFENSE COUNSEL'S ERRORS VIOLATED MR. FANNIN'S RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL, AS GUARANTEED BY THE UNITED STATES CONSTITUTION AND THE CONSTITUTION OF THE STATE OF OHIO.

{¶ 86} In his second assignment of error, Fannin alleges that his trial counsel was ineffective. We find no merit to Fannin's argument.

{¶ 87} To establish a claim of ineffective assistance of counsel, the appellant must show that counsel's actions were outside the wide range of professionally competent assistance and that he was prejudiced as a result of counsel's actions. *State v. Patrick*, 12th Dist. Butler No. CA2015-05-090, 2016-Ohio-995, ¶ 13, citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984).

{¶ 88} Fannin complains that his counsel was ineffective for failing to call an expert witness to contradict the state's expert witness. In so doing, he does not explain what an expert would have said, much less how it would have been helpful in his defense. Notwithstanding, it is well established that a decision regarding whether to call witnesses falls within the ambit of trial strategy. *State v. B.J.T.*, 12th Dist. Warren No. CA2018-06-062, 2019-Ohio-1049, ¶ 17. This is especially true here when considering there is no indication that trial counsel's failure to call an expert witness was the result of incompetence or negligence as opposed to sound trial strategy. *See, e.g., State v. Wells*, 12th Dist. Warren No. CA2005-04-050, 2006-Ohio-874, ¶ 14 (speculation is insufficient to find error on behalf of trial counsel). This court has held that even "a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel." *State v. Smith*, 12th Dist. Fayette No. CA2006-08-030, 2009-Ohio-197, ¶ 49. As a result, Fannin's claim that he received ineffective assistance of counsel when his attorney failed to call an expert witness to contradict the state's expert lacks merit.

{¶ 89} Next, Fannin claims that his counsel should have objected to the testimony of Dina Thurman, the pediatric nurse practitioner. However, as detailed in the resolution of Fannin's sixth assignment of error, Thurman's testimony was admissible and not improper. Contrary to Fannin's argument otherwise, counsel was not deficient in this regard as any

motion would have been meritless. *State v. Kremer*, 12th Dist. Warren Nos. CA2017-07-115 and CA2017-07-116, 2018-Ohio-3339, ¶ 27; *State v. Yarbrough*, 104 Ohio St.3d 1, 2004-Ohio-6087, ¶ 117 (counsel is not deficient for failing to raise a meritless issue).

{¶ 90} Finally, Fannin argues that his counsel committed multiple errors, the cumulative effect of which deprived him of effective representation. "Under the doctrine of cumulative errors, a reviewing court 'will reverse a conviction when the cumulative effect of errors deprives a defendant of a fair trial even though each of the instances of trial-court error does not individually constitute cause for reversal.'" *State v. Wilson*, 12th Dist. Warren No. CA2018-03-022, 2019-Ohio-338, ¶ 25, quoting *State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, ¶ 140. Harmless or nonprejudicial errors cannot become prejudicial by sheer weight of numbers alone. *See State v. Hill*, 75 Ohio St.3d 195, 212 (1996). In addition, "[i]t is not enough simply to intone the phrase 'cumulative error.'" *State v. Bethel*, 110 Ohio St.3d 416, 2006-Ohio-4853, ¶ 197. Without analysis or explanation as to why or how the errors have had a prejudicial effect, an assignment of error claiming cumulative errors has no substance. *State v. Sapp*, 105 Ohio St.3d 104, 2004-Ohio-7008, ¶ 103.

{¶ 91} We decline to address the alleged "multiple errors" that Fannin's trial counsel committed. Aside from the two issues detailed in this assignment of error, Fannin does not specify what the alleged errors were or how they denied him a fair trial. It is not the duty of an appellate court to search the record for evidence to support an appellant's argument as to any alleged error. *Wilson*, 2019-Ohio-338 at ¶ 27.

{¶ 92} Upon thorough review of the record, we find Fannin was not deprived of effective assistance of counsel. Fannin's sixth assignment of error is overruled.

{¶ 93} Judgment affirmed.

S. POWELL and BYRNE, JJ., concur.