[Cite as *State v. Ludwick*, 2022-Ohio-2609.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HIGHLAND COUNTY

| | | |
|---|---|---|
| State of Ohio, | : | Case No. 21CA17 |
| Plaintiff-Appellee, | : | |
| v. | : | <u>DECISION AND</u><br><u>JUDGMENT ENTRY</u> |
| Aaron Ludwick, | : | |
| Defendant-Appellant. | : | **RELEASED 7/26/2022** |

<u>APPEARANCES</u>:

Max Hersch, Assistant State Public Defender, Office of the Ohio Public Defender, Columbus, Ohio for appellant.

Anneka P. Collins, Highland County Prosecutor, Hillsboro, Ohio, for appellee.

Hess, J.

{¶1} Aaron Ludwick appeals his four convictions for rape of a minor less than ten years of age and one conviction of rape by force or threat of force. He contends that: (1) the trial court erred when it allowed the prosecution to ask him questions about his sexual history; (2) he had ineffective assistance of counsel for (a) failing to object to other-acts testimony about Ludwick's behavior at certain social events, (b) failing to request a redaction of a portion of a forensic interview that contained hearsay alleging other crimes, and (c) failing to request a waiver of court costs; and (3) multiple errors cumulatively deprived him of his constitutional right to a fair trial.

{¶2} We find that the trial court erred when it allowed prior-acts evidence of Ludwick's sexual history to be admitted. It was not relevant to show plan, motive, or intent and was inadmissible propensity evidence under Evid.R. 404(B). However, we find the

error harmless – the prior acts were unlikely to affect the jury's verdict and the remaining evidence against Ludwick established his guilt beyond a reasonable doubt. As to the prior-acts evidence of Ludwick's behavior at certain social events, we find that his trial counsel was not ineffective for failing to object because that evidence was admissible under Evid.R. 404(B) to explain the victim's delayed disclosure of the sexual abuse and to prove the force element for one of the rape charges. We find that his trial counsel was not ineffective for failing to seek redaction of certain statements made by the victim in a forensic interview. Those statements were not hearsay – they were not offered to prove the truth of the matter asserted – but to provide context and show state of mind.  Because we find only one error occurred during the trial and it was harmless, we reject his argument that the cumulative error doctrine requires a new trial. The cumulative error doctrine does not apply here. Finally, we reject his contention that his trial counsel was ineffective for failing to request a waiver of court costs. He has failed to establish that a reasonable probability exists that his request would have been granted.

{¶3}    We overrule Ludwick's assignments of error and affirm the judgment.

## I. PROCEDURAL HISTORY

{¶4}    In March 2021, the Highland County Grand Jury indicted Ludwick on four counts of rape of his daughter, N.L., a minor being less than ten years of age, in violation of R.C. 2907.02(A)(1)(b), and one count of rape of N.L. by force or threat of force, in violation of R.C. 2907.02(A)(2), all first-degree felonies. Ludwick pleaded not guilty and the case proceeded to trial.

{¶5}    N.L. testified that when she was six years old, in first grade, and living in an apartment with her father, Aaron Ludwick, her mother, M.G., and a younger sister,

Ludwick would make N.L. sit on a blue recliner chair and he would digitally penetrate her vagina and have her rub his penis. The sexual abuse continued several times a week, escalating in nature until she turned 14 years old.  When N.L. was seven, Ludwick put his penis inside her vagina. She testified that she cried and asked him to stop. She would stare at a gray console television in the room while the abuse occurred. When she was eight years old and in third grade, Ludwick put his penis inside her anus. She testified that she hated anal sex but that Ludwick would ejaculate more quickly so the ordeal would be over more quickly. In fourth grade, when she was nine, the family moved from the apartment into a house. When they moved to that house, Ludwick forced N.L. to perform oral sex on him and also masturbate him with her hand.

{¶6}    N.L. testified that when she was in the fourth grade, she went to a sleepover at a friend's house with several other girls. She said she and another girl were touching each other under their pants and humping. The other girls asked about their actions and N.L. told them, "that's what my dad made me do and that I would lay with him until white stuff came out and then we'd be done." She said the discussion came up again at the school lunch table a few days later and she again told them that her dad "would make me lay with him until white stuff came out." Two of the girls present at the sleepover and the lunch table discussion testified that they recalled the incident and lunch discussion and N.L. told them, "She has to lay naked with him [her dad] until white stuff comes out and then she's done."  And, "[N.L.] mentioned that her dad made her lay in bed with her naked. * * * she didn't know if that was something we all had to do with our dads or um if that was unnormal." One of the girls testified that she went home after school that afternoon and told her mother about N.L.'s comments. That mother testified that after her daughter told

her about the lunch conversation, she called a school administrator and reported the information. She did not know what the school did after she reported it, but learned prior to trial that the school never followed up on it.

**{¶7}** N.L. testified that the sexual abuse continued when she was 10 and 11 years old and in the fifth and sixth grades and that most often her father forced vaginal sex on her. She testified that her father had a bag that contained a corset and skirt and she was required to wear that during sex. She also testified that her father took her to purchase thong underwear for her 14th birthday, which he forced her to wear during sex. N.L. testified that her father had a video camera that he used to record their anal sex when she was approximately 12 years old.

**{¶8}** N.L. testified that the sexual assaults stopped in 2018 when she was 14 and started menstruating. However, there was one additional final time when she was 14, during which Ludwick wore a condom and forced anal sex on her.

**{¶9}** N.L. testified that in January 2021, several years after the abuse stopped, she told her boyfriend about it, he told his mother, and his mother talked to N.L. and convinced her to tell her mother, M.G. N.L. testified that when she told her mother about the abuse, her mother took her to the sheriff's office and then they went to Children's Hospital for an interview.

**{¶10}** N.L.'s mother, M.G., testified that she had been in a relationship and lived with Ludwick for 18 years, and they had two children together, including N.L. During the relevant time period, M.G. worked the night shift from 10:30 p.m. to 6:30 a.m. M.G. testified that they used to own a blue recliner and a gray console television set. M.G. testified that Ludwick told her to take N.L. and get her on birth control when she started

menstruating at 14.  M.G. refused and told him that N.L. did not need to be on birth control because she was only 14 and was driven everywhere by her parents.  M.G. identified the corset and skirt and testified that Ludwick made her wear it sometimes during sex.  M.G. testified that Ludwick took two recent trips to Brazil, one in October 2020 and one in December 2020. He returned from the second trip on January 10, 2021. Ten days later on January 20, 2021 Ludwick told her that he was leaving her for a woman he met in Brazil. M.G. said she was very upset, but did not tell her children because Ludwick said he would tell them when he was ready. The next morning, January 21, 2021, N.L. told her about the sexual abuse and they went to the sheriff's office.

{¶11}  N.L.'s boyfriend and his mother testified about their discussions with N.L. concerning the sexual abuse. The social worker/forensic interviewer at Children's Hospital testified about her interview with N.L. and played the recorded interview session she had with N.L. in which N.L. discussed the sexual abuse in a manner consistent with her trial testimony. Last, the detective at the Highland County Sheriff's Office testified about the interviews he conducted with M.G. and N.L. and his subsequent search of Ludwick's house and cellphone contents.

{¶12}  The defense theory was that N.L. had learned that Ludwick was leaving her mother, so N.L. decided to make up rape allegations to get back at him for hurting her mother. The defense had a secondary theory that N.L. wanted to free herself of Ludwick's strict, yet responsible parenting by falsely accusing him of rape. Ludwick testified that he never raped N.L. in any manner.

**{¶13}** A jury convicted him on all counts and the trial court sentenced him to an 11-year prison term plus four consecutive terms of life imprisonment without eligibility for parole and he was ordered a Tier III registered sex offender.

## II. ASSIGNMENTS OF ERROR

**{¶14}** Ludwick assigns the following errors for our review:

1. The trial court erred by permitting the prosecution to ask Mr. Ludwick about his sexual history. Evid.R. 404(B); *State v. Hartman*, 161 Ohio St.3d 214, 2020-Ohio-4440, 161 N.E.3d 651; *State v. Smith*, 162 Ohio St.3d 353, 2020-Ohio-4441, 165 N.E.3d 1123; *State v. Graham*, 164 Ohio St.3d 187, 2020-Ohio-6700, 1782 N.E.3d 841. (Aug. 13, 2021 Tr. at 54-55)

2. Trial counsel for Mr. Ludwick rendered ineffective assistance by failing to object to testimony concerning Mr. Ludwick's other acts. Evid.R. 404(B); Evid.R. 402; Evid.R. 403(A); *Strickland v. Washington*, 466 U.S. 668, 688, 104 S.Ct. 2052, 2064, 780 L.Ed.2d 674 (1984). (August 12, 2021 Tr. at 315-18, 326, 328, 337-338).

3. Counsel for Mr. Ludwick rendered ineffective assistance by failing to object or to move to redact a portion of the forensic interview that contained hearsay alleging other crimes. Evid.R 801(C); Evid.R. 404(B); *Strickland v Washington,* 466 U.S. 668, 688, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). (August 12, 2021 Tr. at 265.)

4. The multiple errors cumulatively deprived Mr. Ludwick of his constitutional right to a fair trial. *State v. Froman*, 162 Ohio St.3d 435, 2020-Ohio-4523, 165 N.E.3d 1198. (Aug. 12, 2021 and Aug. 13, 2021 Trs., *passim.*)

5. Trial counsel for Mr. Ludwick rendered ineffective assistance by failing to request a waiver of court costs. R.C. 2947.23(C); *State v. Davis*, 159 Ohio St.3d 31, 2020-Ohio-309, 146 N.E.3d 560; *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

## III. LAW AND ANALYSIS

### A. Testimony Regarding "Other Acts" under Evid. R. 404(B)

{¶15} In his first and second assignments of error, Ludwick contends that the trial court erred by allowing, over his counsel's objections, questions about his sexual behavior, specifically anal sex, and that his counsel was ineffective for failing to object to testimony portraying him as an "overbearing, unsavory parent." He argues that the trial court should have sustained his counsel's objection and prevented the prosecutor from asking him whether he enjoyed anal sex. He contends that his enjoyment of anal sex had no relevancy to any disputed issue and established an impermissible propensity inference:  Because he enjoys anal sex, he must have engaged in anal sex with N.L.

{¶16} He also contends that his trial counsel should have objected to "other acts" testimony on at least four occasions including his behavior at a school dance, during a sleepover hosted at his house, during a birthday party, and at a pool party hosted at his house. He argues that this testimony also allowed other-acts evidence to be placed before the jury in violation of Evid. R. 404(B).

1. Standard of Review

{¶17} Courts use a three-step analysis to determine whether evidence of other crimes, wrongs, or acts of an accused may be admissible. *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, ¶ 19.

> The first step is to consider whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Evid.R. 401. The next step is to consider whether evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B). The third step is to consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice. *See* Evid.R 403.

*Id.* at ¶ 20.

{¶18} The admissibility of other-acts evidence under Evid.R. 404(B) is a question of law that we review de novo. *State v. Hartman*, 161 Ohio St.3d 214, 2020-Ohio-4440, 161 N.E.3d 651, ¶ 22 ("because '[d]etermining whether the evidence is offered for an impermissible purpose does not involve the exercise of discretion * * *, an appellate court should scrutinize the [trial court's] finding under a *de novo* standard' of review" (brackets and emphasis sic.)). "Weighing the probative value of the evidence against its prejudicial effect is a highly fact-specific and context-driven analysis. Balancing the risks and benefits of the evidence necessarily involves an exercise of judgment; thus, the trial court's determination should be reviewed for an abuse of discretion." *Id.* at ¶ 30. Thus, we conduct a de novo review of the first two steps of the analysis (i.e., is the evidence relevant and is it presented for a legitimate purpose) and we conduct an abuse of discretion review of whether the probative value of it outweighs the danger of unfair prejudice. *State v. Lotzer*, 3d Dist. Allen No. 1-20-30, 2021-Ohio-3701, ¶ 8 ("the first two steps (i.e., relevancy under Evid.R. 401 and Evid.R. 402 and the particular purpose the evidence is offered under Evid.R. 404(B)) are intertwined and pose legal questions, and thus, are reviewed under a de novo standard of review. * * * However, the third step (i.e., Evid.R. 403's balancing tests) 'constitutes a judgment call,' which we review under an abuse-of-discretion standard.").

### 2. Other Acts Evidence - Anal Sex

{¶19} Evid.R. 404(B) prohibits evidence of a defendant's "other crimes, wrongs, or acts" when "its only value is to show that the defendant has the character or propensity to commit a crime." *State v. Smith*, 162 Ohio St.3d 353, 2020-Ohio-4441, 165 N.E.3d 1123, ¶ 36. Defendant's other acts are admissible for another purpose, such as "motive,

opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." In other words, " 'the evidence must prove something other than the defendant's disposition to commit certain acts.' " *Id.*, quoting *State v. Hartman,* 161 Ohio St.3d 214, 2020-Ohio-4440, 161 N.E.3d 651, ¶ 22.

> The threshold question is whether the evidence is relevant. * * * [T]he problem with other-acts evidence is rarely that it is irrelevant; often, it is too relevant. In the Evid.R. 404(B) context, the relevance examination asks whether the proffered evidence is relevant to the particular purpose for which it is offered, as well as whether it is relevant to an issue that is actually in dispute.

*State v. Smith,* 162 Ohio St.3d 353, 2020-Ohio-4441, 165 N.E.3d 1123, ¶ 37.

**{¶20}** The court should evaluate whether the evidence is relevant to a non-character based issue material to the case. "If the evidence is not premised on improper character inferences and is probative of an issue in the case, the court must then consider whether the evidence's value 'is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.' " *Id.* at ¶ 37.

**{¶21}** The state argues that the question about whether Ludwick enjoys anal sex is not a question about prior acts but was intrinsic to the offense. "Evid.R. 404(B) only applies to '[e]vidence of *other* crimes, wrongs, or acts' extrinsic to the charged offense and not those acts that are intrinsic to the offense." *State v. Lotzer*, 2021-Ohio-3701, ¶ 10. The state argues that the question of whether Ludwick enjoyed anal sex was "not a question about a prior act at all. * * * The question and answer regarding anal sex is not an act at all."

**{¶22}** We disagree. The question about anal sex inquired into other prior acts of anal sex. During Ludwick's cross-examination, the state asked Ludwick about his daughter's testimony:

Q. Okay and she, [N.L.] testified she was seven when you put her [sic] penis in her vagina in that bedroom, correct?

A. That's what she testified.

Q. And you liked having anal sex, isn't that correct?

Defense Counsel: Objection.

At this point, the trial court held a sidebar with defense counsel and the prosecutor, the substance of which was not transcribed for the trial transcript and no statement of it was prepared pursuant to App.R. 9(C) or 9(E). Where a trial court fails to record sidebar conferences as required by Crim.R. 22 ("In serious offense cases all proceedings shall be recorded."), defendant bears the burden of reconstructing what had been said off the record under App.R. 9. *State v. Brewer,* 48 Ohio St.3d 50, 61, 549 N.E.2d 491 (1990). Ludwick did not raise the Crim.R. 22 error on appeal and he failed to comply with App.R. 9(C) or (E). However, Ludwick's failures do not prevent us from effectively reviewing the issue; the record is sufficient for us to conduct a de novo review of the legal aspects of this evidentiary ruling. The requirement of Crim.R. 22 "does not mean that the trial record must be perfect for purposes of appellate review." *State v. Ketterer*, 111 Ohio St.3d 70, 2006-Ohio-5283, 855 N.E.2d 48, ¶ 158-159 (although there were seven unrecorded sidebars, the record was adequate for appellate review); *State v. Davis,* 1st Dist. Hamilton No. C-130198, 2014-Ohio-794, ¶ 11-15 (where record was sufficient for appellate review of an issue, appellant's failure to comply with App.R. 9(C) did not result in a waiver of the issue on appeal or prevent effective review).

{¶23} The court overruled the objection and the state's cross-examination continued. The state asked Ludwick again whether he enjoys anal sex:

Q. Do you need me to repeat it?

A. Yes, please.

Q. And you like anal sex, isn't that correct?

A. From time to time, yes.

Q. You complained to [M.G.] because she wouldn't do that kind of thing with you, didn't you?

A. I wouldn't say I complained. I asked her to a few times.

Q. [N.L.] testified that you put your penis in her anus, didn't she?

A. She did testify to that.

{¶24} The question, "And you like anal sex, isn't that correct?" presupposes prior acts of anal sex. The question is compound in the sense that it implicitly assumes that Ludwick has engaged in anal sex before and therefore has a prior experience upon which to assess whether he enjoys it. In full the question asks: You have engaged in prior acts of anal sex and you like anal sex, isn't that correct? Therefore, we find that the question implicitly asks about prior acts of anal sex.

{¶25} The state also argues that, even if the question raises prior acts, it was proper under Evid.R. 404(B) as evidence of Ludwick's plan, motive, and intent. The state argues that: (1) N.L. testified that the sexual abuse escalated from vaginal to anal sex, (2) Ludwick's long-term partner, M.G., testified that their sexual relationship involved him complaining about her weight and her doing things she did not want to do, and (3) Ludwick testified that he asked M.G. to engage in anal sex a few times. Therefore, the state argues, "[M.G.] was no longer what [Ludwick] wanted and she complained about that which he liked, this goes directly to [Ludwick's] motive, plan, and intent to perform anal sex on N.L."

**{¶26}** First, M.G. did not testify about whether she and Ludwick engaged in anal sex. The entirety of her testimony was:

> Q. I'm going to ask you a few personal questions, how was your sexual relationship with the Defendant when you were together?
>
> A. Well, he always complained that I'm too big, I need to lose weight. Um and he always have me do stuff that sometimes I don't do. I don't want to do.
>
> Q. Why would you do things you didn't want to do?
>
> A. Because um, I'm his partner and I should do it.
>
> Q. Is that your culture, is that how you were raised?
>
> A. Yeah.

M.G. did not testify specifically about anal sex. Ludwick did not testify that M.G. refused to have anal sex with him. He testified that he asked her to have anal sex a few times but he was not asked and did not testify about her response, "I asked her to a few times."

**{¶27}** The threshold question of whether Ludwick's history of anal sex is relevant under Evid.R. 401 requires us to consider whether it makes any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. The fact that Ludwick has had anal sex in the past and has enjoyed it makes it more likely that he would engage in anal sex in the future. Thus, it may make it more likely that, if he is sexually abusing his minor daughter, that abuse would include anal sex. In other words, it shows he has a propensity towards it – the type of evidence Evid.R. 404(B) is designed to exclude. "It is almost always true that propensity evidence will have some relevance. Indeed, such evidence is excluded 'not because it has no appreciable probative value but because it has too much.' " *State v. Hartman*, 161 Ohio St.3d 214, 2020-Ohio-4440, 161 N.E.3d 651, ¶ 25.

**{¶28}** However, as *Hartman* cautions, "in Evid.R. 404(B) cases, the inquiry is not whether the other-acts evidence is relevant to the ultimate determination of guilt." *Id.* at ¶ 26. Instead, the focus is on "whether the evidence is relevant *to the particular purpose* for which it is offered." (Emphasis sic.) *Id.* at ¶ 26. But, "it is not enough to say that the evidence is relevant to a nonpropensity purpose. The nonpropensity purpose for which the evidence is offered must go to a 'material' issue that is actually in dispute between the parties." *Id.* at ¶ 27. The state argues that Ludwick's "preference for anal sex shows [Ludwick's] plan, motive, and intent." Ludwick argues that his motive, intent, or plan were not disputed issues at trial. We address each of the three nonpropensity purposes separately.

### a. Plan

**{¶29}** "[P]lan evidence need not share any common characteristics with the current crime; rather, the other acts are linked to the present crime because they are carried out in furtherance of the same overall plan. Evidence of a plan or common design 'refers to a larger criminal scheme of which the crime charged is only a portion.' " *Hartman* at ¶ 40.

> Common-plan evidence generally concerns events that are "inextricably related" to the crime charged. The other acts form the "immediate background" of the present crime: they are typically either part of the "same transaction" as the crime for which the defendant is on trial or they are part of "a sequence of events" leading up to the commission of the crime in question. As one authority has explained, this type of other-acts evidence is admitted
>
> > [t]o prove the existence of a larger, continuing plan, scheme, or conspiracy, of which the present crime on trial is a part. This will be relevant as showing motive, and hence the doing of the criminal act, the identity of the actor, and his intention, where any of these is in dispute.

> Thus, plan evidence generally supports one of the following possible conclusions: "(1) the occurrence of the act in issue; (2) the identity of the person who committed the act; or (3) the existence of the required mental state in the actor." (Citations omitted.)

*Hartman* at ¶ 41.

**{¶30}** The state's argument is that "[M.G.] was no longer what [Ludwick] wanted and she complained about that which he liked, this goes directly to [Ludwick's] motive, plan, and intent to perform anal sex on N.L." However, the evidence that Ludwick engaged in anal sex in the past and enjoyed it does not fit into the common understanding of "plan" evidence. Ludwick's prior acts of anal sex with other consensual partners was not part of a larger scheme involving the anal rape of his daughter. As the Court explained in *Hartman*, there could be instances where seemingly unrelated but highly similar prior acts could be evidence of a common scheme to commit the crime charged, nevertheless those prior acts must be part of the same grand design:

> We stress, however, that plan evidence should show that the crime being charged and the other acts are part of the same grand design by the defendant. Otherwise, proof that the accused has committed similar crimes is no different than proof that the accused has a propensity for committing that type of crime. The takeaway for the jury becomes, "The accused did it once recently; therefore, the accused did it again."

*Hartman* at ¶ 46; *State v. O'Connell,* 2020-Ohio-1369, 153 N.E.3d 771, ¶ 19 (1st Dist.) (to show furtherance of a "plan," other acts must typically form part of the "immediate background of the crime charged," where the evidence plays an integral part in explaining "the sequence of events and is necessary to give a complete picture of the alleged crime"). There is no connection between Ludwick's prior acts of anal sex and the rape charges involving his daughter because they are not part of the same grand design. They were not properly admitted for the purpose of showing a plan.

b. Motive

**{¶31}** "Motive evidence establishes that the accused had a specific reason to commit a crime." *Hartman* at ¶ 48. Here Ludwick's prior anal sex acts do not establish a motive for the anal rape of his daughter. His motive was sexual gratification and was not a material issue in dispute at trial. Ludwick's prior anal sex "does not provide evidence of any motive to commit rape beyond that which can be inferred from the commission of any rape." *Id.* at ¶ 49. A person commits rape for " 'the obvious motive of sexual gratification.' " *Id.,* quoting *State v. Curry,* 43 Ohio St.2d 66, 71, 330 N.E.2d 720 (1975); *State v. Fannin*, 12th Dist. Warren No. CA2020-03-022, 2021-Ohio-2462, ¶ 25 (defendant's "motive in this case was not a material issue in dispute; he was undoubtedly pursuing sexual gratification" where defendant raped his step-daughter over a period of years when she was between the ages of five and seven). "[I]n most cases of this type [rape], there is no motive beyond that implicit in the commission of the offense itself." *Hartman* at ¶ 50.

**{¶32}** The state's argument that it showed Ludwick's motive because he wanted to have anal sex with his partner M.G. and complained that M.G. would not do it with him is not factually supported by the record. M.G. testified she did things she did not want to do with Ludwick and when asked why, she testified that she believed she should do those things as his partner, that it was her culture, and it was how she was raised. There was no testimony to support the state's argument that a lack of anal sex in Ludwick's adult relationships motivated him to anally rape his daughter.

**{¶33}** Additionally, the state cites no case law to support its argument that a lack of consensual anal sex provides "motive evidence" for the crime of anal rape and our

research did not locate any Ohio case law on point. Ohio law holds that rape provides its own motive – sexual gratification. *See e.g, Hartman, Curry, Fannin, supra.* Our research of other states' case law has located some courts which, if they have not held it to be irrelevant and inadmissible, have allowed past refusals of anal sex to show motive for anal rape. However, because we have no evidence that M.G. denied Ludwick anal sex and because motive is not a material issue in dispute here, we find those cases unpersuasive. *See Warner v. State,* 144 P.3d 838 (Okla. 2006) (in defendant's trial for anal rape and murder of 11-month-old infant, defendant's girlfriend's testimony that defendant asked her for anal sex three to five times in the two weeks prior to the murder and was refused, was relevant under Evid.R. 404(B) to show motive and intent as well as identity); *see also People v. Conyac,* 361 P.3d 1005 (Colo. 2014) (in defendant's trial for sexual assault of minor, wife's testimony that defendant requested but was denied anal sex with her was relevant to show motive under Evid.R. 404(B) "it tended to prove that defendant had a desire for anal sex that was unsatisfied * * * that motive made it more likely than not that defendant committed an anal sexual assault upon [minor]"); *see also State v. Pullman,* 306 P.3d 827 (Utah 2013) (in defendant's trial for sodomy and aggravated sexual abuse of a child, ex-wife's testimony that defendant had desire for anal sex that was unsatiated due to her refusal to engage in it was relevant to show motive under Evid. R. 404(B)); *People v. Elkins*, Cal. 1st Dist. No. D075724, 2021 WL 193189 (Cal.App. Jan. 20, 2021) (in defendant's trial for rape, applying an "abuse of discretion" standard of review, the trial court did not abuse its discretion in allowing ex-wife's testimony that defendant enjoyed anal sex, "although the admissibility of this evidence

may be a 'close call' subject to disagreement" and finding that trial court could have found that it was relevant to motive, intent, or common design).

### c. Intent

**{¶34}** The Court in *Hartman* explained that other-acts evidence can be used to show intent where the defendant claims the act was accidental or otherwise committed with a lack of guilty knowledge, but intent is not an issue where the defense theory is – as it is here – that the criminal act never occurred:

> Other-acts evidence is admissible to negate a defendant's claim of mistake or accident with respect to the commission of the alleged crime; such evidence tends "[t]o show, by similar acts or incidents, that the act in question was not performed inadvertently, accidentally, involuntarily, or without guilty knowledge." In the criminal context, there are generally two ways in which the accused may raise a claim of accident. The first involves whether a criminal act occurred at all. * * *
>
> The second scenario implicates the intent of the accused. The question here is not whether the act occurred but whether the defendant acted with a criminal intent. * * *
>
> *                    *                    *
>
> Intent is an element of most crimes, but it typically is not a material issue for other-acts purposes unless it is genuinely disputed—in most cases, "the act speaks for itself." Thus, intent evidence is not admissible when "the requisite intent is presumed or inferred from proof of the criminal act itself," *or when intent is not in issue at all, such as when the defense theory is that the act never occurred.* (Citations omitted.) (Emphasis added.)

*State v. Hartman,* 161 Ohio St.3d 214, 2020-Ohio-4440, 161 N.E.3d 651, ¶ 52-53, 55.

**{¶35}** Here Ludwick never raised intent as a material issue in his defense. He did not claim that N.L. was an adult and the acts were consensual, nor did he contend he accidentally engaged in the acts or was asleep at the time they occurred. *See Hartman, supra* (defendant claimed adult victim consensually engaged in oral sex); *State v. Smith,*

162 Ohio St.3d 353, 2020-Ohio-4441, 165 N.E.3d 1123 (defendant claimed any contact with his granddaughter's vagina was accidental and, if his penis pressed into her backside, it was a nocturnal erection that occurred while he was sleeping). Instead, Ludwick's defense was that the alleged criminal acts never occurred; his daughter was a liar. Therefore, his prior anal sex acts were not admissible to show intent.

**{¶36}** The evidence of Ludwick's prior anal sex was improper propensity evidence and the trial court erred in admitting it. Because it was inadmissible, we need not reach the third question in the analysis: whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice under Evid. R. 403. *Hartman* at ¶ 64 ("Because we have determined that the other-acts evidence was inadmissible, we need not reach the question whether the trial court abused its discretion in otherwise permitting the evidence pursuant to Evid.R. 403").

### 3. Evidence of Prior Acts/Anal Sex was Harmless Error

**{¶37}** Although we find that the trial court erred in allowing the other-acts evidence of Ludwick's prior anal sex to be admitted, Crim.R. 52(A) requires us to determine whether this error was harmless. Crim.R. 52(A) ("Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded."). "If a court determines that the error did not affect the defendant's substantial rights, then the error is harmless and shall be discarded." *State v. Morris*, 141 Ohio St.3d 399, 2014-Ohio-5052, 24 N.E.3d 1153, ¶ 23.

**{¶38}** We use a three-part test to determine when a defendant's substantial rights are affected (i.e., whether the error was harmless).

> First, it must be determined whether the defendant was prejudiced by the error, i.e., whether the error had an impact on the verdict. Second, it must

be determined whether the error was not harmless beyond a reasonable doubt. Lastly, once the prejudicial evidence is excised, the remaining evidence is weighed to determine whether it establishes the defendant's guilt beyond a reasonable doubt. (Citations omitted.)

*State v. Harris*, 142 Ohio St.3d 211, 2015-Ohio-166, 28 N.E.3d 1256, ¶ 37, citing *Morris, supra.* "[O]ur role upon review of this case is not to sit as the supreme trier of fact, but rather to assess the impact of this erroneously admitted testimony on the jury." *Morris* at ¶ 29. "[A]n improper evidentiary admission under Evid.R. 404(B) may be deemed harmless error on review when, after the tainted evidence is removed, the remaining evidence is overwhelming." *Id.* at ¶ 32. The state has the burden of proving that the error was harmless. *State v. Elkins*, 4th Dist. Lawrence No. 17CA14, 2019-Ohio-2427, ¶ 26 citing *Morris, supra.*

**{¶39}** Here the prior-acts evidence was not "other crimes" or "wrongs," such as prior criminal convictions or prior allegations of sexual molestation. Rather, it was simply evidence that Ludwick had previously engaged in anal sex and enjoyed it.[1] It is likely that a jury surmised from the act itself that, if the defendant had repeated anal sex with his daughter, it was done for sexual gratification (i.e., he enjoyed anal sex). Moreover, even if Ludwick had not been asked about these prior acts and his enjoyment of them, there was other evidence in the record from which the jury could conclude that Ludwick enjoyed anal sex. N.L. testified that Ludwick raped her anally numerous times and that he

---

[1] In arguing that prior-acts evidence of anal sex is not unfairly prejudicial, Utah argued that anal sex no longer has a negative connotation:

> [The state] asserts that "while consensual anal sex may have carried a negative or even deviant connotation in the past, sexual mores have changed." In support of this assertion, the State cites a national survey concluding that among adults aged twenty-five to forty-four, 36% of women and 44% of men report having had anal sex with an opposite-sex partner. *See* Anjani Chandra et al., *Sexual Behavior, Sexual Attraction, and Sexual Identity in the United States: Data From the 2006–2008 National Survey of Family Growth* at *9, *available at* http://www. cdc.gov/nchs/data/nhsr/nhsr036.pdf (last visited June 4, 2013).

*State v. Pullman*, 306 P.3d 827, ¶ 41, fn. 10 (Utah 2013).

ejaculated more quickly when he penetrated her anally than when he penetrated her vaginally. From this testimony alone, setting aside the prior-acts evidence, the jury could reasonably infer that Ludwick enjoyed anal sex. Thus, we do not find that the prior-acts evidence here impacted the jury verdict.

{¶40} Additionally, under the second and third prongs of the test, we are persuaded beyond a reasonable doubt that the error was harmless because the remaining evidence established Ludwick's guilt beyond a reasonable doubt. *State v. Williams*, 874 P.2d 12 (N.M. 1994) (in defendant's trial for anal rape and murder, defendant's girlfriend's testimony that he enjoyed anal sex was not relevant and did not fit any Evid.R. 404(B) exceptions, but its admission was harmless error because of the "abundant evidence" that he committed the crimes charged); *Cooper v. State*, 901 S.W.2d 757 (Tex. 1995) (in defendant's trial for sexual assault of two minors, ex-wife's testimony that defendant had "unnatural" sexual preference for anal sex was irrelevant propensity evidence prohibited by Evid.R. 404(B) and, under the circumstances of the case, was harmful error warranting a new trial); *State v. Dunston*, 588 S.E.2d 540 (N.C. 2003) (in defendant's trial for sexual abuse of a child, wife's testimony that defendant liked to engage in anal sex was not relevant under Evid.R. 404(B), was improper propensity evidence, and was prejudicial "especially in light of the inconsistent and unclear nature of the remaining evidence in the case" and warranted a new trial).

{¶41} First, N.L. provided credible testimony about numerous instances of rape over an eight-year period, including digital penetration, oral, anal, and vaginal. N.L.'s mother corroborated N.L.'s testimony by confirming that a grey television console and a blue recliner were part of furniture they owned when N.L. was six years old. Both N.L.

and her mother testified about the corset and skirt that Ludwick kept in his closet and made them wear during sex. The police recovered those items from his closet during the execution of a search warrant. And perhaps the most credibility-enhancing, corroborating evidence came from the testimony of two of N.L's friends. Her friends testified that when she was in fourth grade and age nine, N.L. told them she had to lay with her dad naked until white stuff came out. A mother of one of the two friends also testified that her daughter told her about N.L.'s statements and she notified the school. Unfortunately, the school administrator failed to act on the information. The fact that N.L. had reported the sexual abuse in fourth grade, about five years before she came forward with the allegations in this case, wholly discredited the defense's theory that N.L. had recently developed an incentive to lie about the rapes because she learned her father was leaving her mother for another woman.

**{¶42}** The admission of the other acts evidence was harmless because the remaining evidence established Ludwick's guilt beyond a reasonable doubt. We overrule Ludwick's first assignment of error.

### 4. Other Acts Evidence - Ludwick's Behavior at Social Events

**{¶43}** In his second assignment of error, Ludwick contends that his trial counsel was ineffective for failing to object to a second type of other acts evidence – testimony of his behavior at social events. He argues that the testimony "painted an unflattering picture" of him as "an overbearing, unsavory parent who often made his child – and others – uncomfortable." Specifically, he points to testimony about his behavior during a school dance that he attended as a chaperone, his behavior at a sleepover hosted at his house at which he became upset that the girls were not sleeping and he grabbed N.L. by the

arm and made her sleep downstairs the rest of the night, his behavior at a pool party he hosted at which he would "always be right there next to us, peering over us," and a birthday party after which Ludwick insisted N.L. ride home with him, though she did not end up doing so.

{¶44} The testimony shows Ludwick's threatening, controlling, and intimidating treatment of and behavior towards N.L. One of the rape counts required the state to prove force as an element of the crime. Ludwick's behavior is admissible to show this element of force. The Twelfth District Court of Appeals recently explained that other acts evidence of a parent's behavior towards family members is a legitimate way to prove force in parent-child relationships:

> In a parent-child relationship, there exists a "filial obligation of obedience to a parent," such that "the same degree of force and violence may not be required upon a person of tender years, as would be required were the parties more nearly equal in age, size and strength." There is a coercive component inherent in parental authority and the demonstration of psychological, albeit subtle, force is sufficient to prove the force element. Evidence of other acts is admissible if it is used to prove a specific element of the offense. Here, the offenses were alleged to have been committed when the victim was in her tender years. Appellant's disparaging comments, threatening statements, and violence against the family pets demonstrated the coercive parental authority appellant had over the victim and the psychological forces he exerted on her to compel the sexual conduct. There was a high probative value to this evidence and it was not outweighed by the danger of unfair prejudice. Therefore, this evidence did not violate Evid.R. 404(B). (Citations omitted.)

*State v. Ruggles*, 2020-Ohio-2886, 154 N.E.3d 151, ¶ 64 (12th Dist.).

{¶45} A parent's prior threatening or controlling behavior is also admissible to show the basis of the victim's fear and to explain why there was a delayed disclosure of the sexual abuse. *State v. Barnett*, 2d Dist. Montgomery No. 27660, 2018-Ohio-4133, ¶ 40. This is particularly true here where Ludwick made N.L.'s credibility a central issue of

the case by trying to connect the timing of N.L.'s sexual abuse disclosure to his decision to leave M.G. *Id.* at ¶ 42.

**{¶46}** Because Ludwick's behavior at social events was admissible under Evid.R. 404(B), Ludwick's counsel's objections to it would have been futile. "The law does not require counsel to take a futile act." *State v. Conant*, 4th Dist. Adams No. 20CA1108, 2020-Ohio-4319, ¶ 30. Ludwick's counsel's performance was not deficient for failing to object to other-acts evidence of Ludwick's behavior at certain social events.

**{¶47}** We overrule his second assignment of error.

B. Counsel's Failure to Move for Redaction of Statements from Forensic Interview

**{¶48}** In his third assignment of error, Ludwick contends that his trial counsel rendered ineffective assistance by failing to object to or move to redact a statement N.L. made during the forensic interview at Children's Hospital. He argues that the statement constituted inadmissible hearsay and should have been redacted from the recording of the interview that was played for the jury.

**{¶49}** To prevail on an ineffective assistance claim, a defendant must show: "(1) deficient performance by counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that, but for counsel's errors, the proceeding's result would have been different." *State v. Short*, 129 Ohio St.3d 360, 2011-Ohio-3641, 952 N.E.2d 1121, ¶ 113, citing *Strickland v. Washington*, 466 U.S. 668, 687-688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Failure to satisfy either part of the test is fatal to the claim. *See Strickland* at 697. The defendant "has the burden of proof because in Ohio, a properly licensed attorney is presumed competent." *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 62.

We "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Strickland* at 689, quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.E. 83 (1955); *State v. Conant,* 4th Dist. Adams No. 20CA1108, 2020-Ohio-4319, ¶ 28.

{¶50} During the interview, the following question and answer was exchanged between N.L. and her interviewer:

> Q. And it's a long time to have not said anything. How do you feel now that you've told your mom?

> A. I feel like better now that he's away from us. And I hope he gets put away in prison because he shouldn't be allowed to be out. Because like people are saying that there's, might be more kids but I don't think he did anything to my sister but even if, because he travels to other countries by himself. So, they are saying that he might have done stuff there but I don't know.

{¶51} The state argues that N.L.'s comments were admissible because they were not hearsay, i.e., they were not offered to prove the truth of the matter asserted. We agree. Under Evid.R. 801(C), " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.L.'s statements that other people were saying that Ludwick may have abused other children were not offered to prove that Ludwick sexually molested other children. Instead, the comments provided the context and state of mind for why N.L. felt better to have Ludwick away from her, her mother, and her sister and why she hoped he would go to prison. *See State v. McKelton,* 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶ 212-217 (where three witnesses testified that they had heard "rumors" "from the streets" that "everybody was saying in the street" that defendant was

responsible for the murders, in each of the three instances the "evidence was offered for a nonhearsay purpose [to provide context or to show state of mind] and not for the truth of the matter asserted. Accordingly, there was no violation of hearsay rules or the Confrontation Clause.")

**{¶52}** Because the statements N.L. made in the forensic interview were not hearsay, Ludwick's counsel's objections to them would have been futile. "The law does not require counsel to take a futile act." *Conant* at ¶ 30. Ludwick's counsel's performance was not deficient for failing to ask for a redaction. We overrule Ludwick's third assignment of error.

## C. Cumulative Errors

**{¶53}** For his fourth assignment of error, Ludwick contends that his conviction should be reversed under the cumulative error doctrine.

**{¶54}** Under the cumulative-error doctrine, "a conviction will be reversed where the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of numerous instances of trial court error does not individually constitute cause for reversal." *State v. Garner*, 74 Ohio St.3d 49, 64, 656 N.E.2d 623 (1995), citing *State v. DeMarco*, 31 Ohio St.3d 191, 509 N.E.2d 1256 (1987), paragraph two of the syllabus; *State v. Ruble*, 2017-Ohio-7259, 96 N.E.3d 792, ¶ 75 (4th Dist.). "Before we consider whether 'cumulative errors' are present, we must first find that the trial court committed multiple errors." *State v. Smith*, 2016-Ohio-5062, 70 N.E.3d 150, ¶ 106 (4th Dist.), citing *State v. Harrington*, 4th Dist. Scioto No. 05CA3038, 2006-Ohio-4388, ¶ 57.

**{¶55}** The cumulative error doctrine does not apply where the defendant "cannot point to 'multiple instances of harmless error.' " *See State v. Mammone*, 139 Ohio St.3d 467, 2014-Ohio-1942, 13 N.E.3d 1051, ¶ 148 ("And to the extent that Mammone more broadly invokes the doctrine of cumulative error, that doctrine does not apply because he cannot point to 'multiple instances of harmless error.' "); *State v. Fannon*, 2018-Ohio-5242, 117 N.E.3d 10, ¶ 124-125 (4th Dist.); *State v. Thacker*, 4th Dist. Lawrence No. 19CA18, 2021-Ohio-2726, ¶ 69-71.

**{¶56}** Ludwick argues that cumulative errors violated his constitutional right to a fair trial. However, because we found only one error, which was harmless, the cumulative error doctrine does not apply. *State v. Mammone,* 139 Ohio St.3d 467, 2014-Ohio-1942, 13 N.E.3d 1051, ¶ 173; *State v. Maxwell,* 139 Ohio St.3d 12, 2014-Ohio-1019, 9 N.E.3d 930, ¶ 253 (doctrine of cumulative error is not applicable where there are not numerous instances of trial-court error and defendant was not prejudiced by any error at the trial or penalty phase of the proceedings); *State v. Spring*, 2017-Ohio-768, 85 N.E.3d 1080, ¶ 59 (7th Dist.) (cumulative error doctrine does not apply to one or two minor errors).

**{¶57}** We overrule Ludwick's fourth assignment of error.

### D. Court Costs

**{¶58}** In his final assignment of error, Ludwick contends that his counsel rendered ineffective assistance because he failed to request a waiver of court costs. Ludwick argues that although he retained private counsel for his trial, "he is now indigent." Ludwick references an affidavit of indigency that was executed on September 9, 2021 and filed with the court on September 17, 2021. He argues, "So at the time of his sentencing, if his

counsel had requested a waiver of court costs, the request would have likely been granted."

**{¶59}** Even though a defendant may move for a waiver of costs "at any time" after the sentencing hearing under R.C. 2947.23(C), the Supreme Court of Ohio has instructed that an appellate court's reliance on this fact in its prejudice analysis is improper. Instead, the Court set forth the required analysis:

> [W]hen trial counsel fails to request that the trial court waive court costs on behalf of a defendant who has previously been found to be indigent, a determination of prejudice for purposes of an ineffective-assistance-of-counsel analysis depends upon whether the facts and circumstances presented by the defendant establish that there is a reasonable probability that the trial court would have granted the request to waive costs had one been made.

*State v. Davis*, 159 Ohio St.3d 31, 2020-Ohio-309, 146 N.E.3d 560, ¶ 16.

**{¶60}** The record does not support Ludwick's factual assertion that he was indigent at the time of the sentencing hearing. He had the financial ability to retain private counsel for his trial, which occurred on August 12 and 13, 2021, and for his sentencing hearing, which began at 1:30 p.m. on August 13, 2021, the same afternoon that his trial ended. Ludwick's indigency affidavit was not obtained until September 9, 2021 and was not filed with the court until a month after the sentencing hearing. Therefore, the evidence of indigency Ludwick references in his brief was not in the record at the time of the sentencing hearing – to the contrary, he was financing his own private defense counsel at the sentencing hearing.

**{¶61}** The facts and circumstances in the record do not establish that a reasonable probability exists that the trial court would have granted Ludwick's request to waive costs had one been made. As the state points out, Ludwick was gainfully employed

as a full-time licensed aircraft mechanic, served on Highland Village Council and the North Highland Joint Fire District Board, regularly travelled for leisure internationally (Brazil in October 2020 and December 2020, the Philippines in 2019, Thailand in 2018), retained private counsel to represent him, and owns his own house.

**{¶62}** Because there was not a reasonable probability that a motion to waive court costs would have been granted, trial counsel did not provide ineffective assistance when he did not seek a waiver of costs at the sentencing hearing. *See State v. Hawkins*, 4th Dist. Gallia No. 13CA3, 2014-Ohio-1224, ¶ 20. We overrule Ludwick's fifth assignment of error.

## IV. CONCLUSION

**{¶63}** We overrule Ludwick's assignments of error and affirm the judgment.

JUDGMENT AFFIRMED.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED.  Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the HIGHLAND COUNTY COURT OF COMMON PLEAS, to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted. The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court.  If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Wilkin, J.: Concur in Judgment and Opinion.

For the Court

BY: _____
Michael D. Hess, Judge

## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**